AGNES D. JENKS AND THOMAS H. JENKS v. HUGH J. McGOWAN.

(Filed Feb. 8, 1900.)

1. CONVEYANCE—*Husband to Wife—Fraud—Notice.* Upon the facts in this case, a deed given by a husband to a wife, conveying his interest in the land in controversy to her, was properly held to be in fraud of creditors. The facts justified the district court in holding that the payments made by her were not in consideration of the conveyance of the land and that, while her deed was recorded first, she will be held to have had notice of the prior conveyances, for value, of the defendant in error, subsequenly recorded, and the latter will be held sustained.

2. EVIDENCE—*Findings not Disturbed.* It is now held, as repeatedly heretofore by this court, that the trial court having heard the testimony, seen the witnesses and had the opportunity of determining, from their appearance and deportment, and manner of giving their testimony upon the witness stand, who should be believed and who should not be believed, and the evidence reasonably tending to support the conclusion of the court, its finding will not be disturbed here.

(Syllabus by the Court.)

*Error from the District Court of Kingfisher County; before John C. Tarsney, District Judge.*

W. W. *Noffsinger,* for the plaintiff in error, Agnes D. Jenks.

*E. G. Spilman* and *M. J. Kane,* for the defendant in error.

STATEMENT OF THE CASE.

This was an action brought by McGowan, defendant in error, in the district court of Kingfisher county, for

the purpose of having a deed from Thomas H. Jenks to his wife, Agnes D. Jenks, set aside, and to have Mc-Gowan declared the owner of the land in controversy.

The defendants are non-residents. Notice by publication was given, and Agnes D. Jenks entered her appearance and filed her answer. The defendant, Thomas H. Jenks, failed to appear.

The evidence showed that in 1889 Thomas H. Jenks made homestead entry upon the southeast quarter of section 11, township 18, range 7, in Kingfisher county; made final proof, and obtained receiver's final receipt in July, 1890, and thereafter obtained a patent to the land from the United States.

On the 25th of February, 1891, Thomas H. Jenks executed a deed of trust to one Ballingal, of Jackson county, Missouri, conveying the land, to secure the payment of a promissory note of even date, for the payment of $163 to Hugh J. McGowan, the plaintiff. This deed of trust recited that Jenks was single and unmarried, and the acknowledgment stated that Jenks "further declares himself to be single and unmarried."

On the 27th day of October, 1890, Jenks executed another deed to McGowan, by which he granted "all of the undivided one-half" of the land to the grantee, in which Jenks again described himself as "single and unmarried," and in which he again stated that "the said Thomas H. Jenks further declares himself to be single and unmarried."

On the 14th day of November, 1892, Jenks, in consideration of the sum of $1,250, executed another warranty deed to McGowan, by which he granted "an un-

divided one-half" of the same land to him, and in which he again described himself as single and unmarried, the acknowledgment also stating that "the said Thomas H. Jenks further declares himself to be single and unmarried."

The trust deed to Ballingal was filed for record in the office of the register of deeds of Kingfisher county on February 28, 1891. The warranty deed of October 27, 1890, was filed for record in the same office on the 17th day of November, 1897, and the warranty deed of November 14, 1892, was field for record there on the 17th day of February, 1898. Jenks ceased to reside upon the land in 1894, and on the 18th day of November, 1895, he executed his warranty deed to "Agnes D. Jenks, his, Thomas H. Jenks', wife, of the Parish of Orleans, in the state of Louisiana," conveying the same land to her, subject to "a certain lease of James Falkenstien," and a certain trust deed to secure the payment of $163 and interest, to Hugh J. McGowan. The deed was executed in the state of Louisiana.

It is conceded that the considerations named respectively, in the two deeds to McGowan, as $400 and $1,250, had been paid to Jenks by McGowan, and that immediately upon the loan of money and the execution of the several deeds from Thomas H. Jenks to McGowan, that McGowan handed them back to Jenks, directing him to have them recorded in the office of the register of deeds of Kingfisher county immediately, and that Jenks accepted the trust thus confided to him, and agreed and promised to have the deeds each immediately recorded.

The petition avers that the deed from Thomas H. Jenks to Agnes D. Jenks was without consideration, was fraudulently made and recorded, for the purpose of defrauding the plaintiff and clouding the title to the land, and that the defendants had each personal knowledge of the execution and delivery of each of the deeds to McGowan, and asked that the deed to Agnes D. Jenks be set aside, and the land cleared from the cloud upon the title caused by it.

Opinion of the court by

McAtee, J.: It is conceded that Thomas H. Jenks has no interest in the land in controversy. It appeared from the testimony of Agnes D. Jenks that she was married to Thomas H. Jenks, in 1870, in New Orleans; that at the time he came to Oklahoma, in April, 1889, he started from Kansas City, Mo., where he left his wife, Agnes D. Jenks, who protested against his coming here, and declined and refused to come to the Territory and make her home with him; that he was an ex- United States naval officer and sailor; that he thought it would be well for him to acquire some land for his son, and that he took advantage of his right as a naval officer to "pre-empt" some land, and that he came to the Territory for that purpose; that she sent him money from time to time, to the amount of $600, while he lived upon the land in controversy, to aid and sustain him during a period when there was no revenue from the land; that she subsequently, after he left the land, supplied him with $300.

Upon cross-examination she testified, as follows:

"Question. And he came down here, notwithstanding your persuasion? Answer. Yes, sir.

"Q.   You didn't come down with him?   A. Oh, no.

"Q. You never have lived here at all?    A. Yes, I have passed through here.

"Q.   I mean, you never lived here; you always claimed your residence to be in New Orleans?   A. Yes; I have lived here as much as two months at a time.

"Q. When he came here in April, 1889, did your husband say then that he had a townsite scheme in contemplation?   A. He was no business man, and never did have a scheme in any way.

"Q. Well, he had it in his mind, didn't he?   A. Oh, no. It was other people that had it on the brain.   He is a good sailor, but a very poor business man.

"Q.   And you didn't give him any of this money in consideration of this place, or any part of the place? A.   Why, yes, in consideration of my son; he was down here all the time pre-empting that land for the benefit of my son, and that was consideration for me.   And then I paid him this $300 when he started for Central America."

The evidence showed that the deed to Agnes D. Jenks was made on the 16th day of November, 1895.   She says that she gave him $300 when he was going to Nicaragua.   But the evidence shows that the deed was made November 18, 1895, and that the money, $300, if paid when he went to Nicaragua, was not paid until the following spring, to-wit: the spring of 1896, some months after the execution of the deed to her, while the testimony as to her payment to him of the various sums, claimed to amount to $800, shows that they were made as gifts, long prior to the execution of the deed to her, and there is no evidence that they were at the time intended as loans to her husband.

This evidence was submitted to the court, without a jury, and the finding of the court was that "the warranty deed from the said defendant, Thomas H. Jenks, to the defendant, Agnes D. Jenks, was made without any valuable consideration, and the said defendant, Agnes D. Jenks, is not an innocent purchaser for the value of said described premises."

The court heard the testimony, saw the witnesses, and had the opportunity of determining from their appearance, deportment and manner of giving their testimony upon the witness stand, who should be believed and who should not be believed.   And it has been repeatedly held by this court, that where evidence was given in a cause reasonably tending to support the conclusion of the court, that this court will not disturb the finding of the trial court.   (*Nat'l. Bank of Guthrie v. Earle*, 2 Okla. 57; *Light v. Canadian Co. Bank*, 2 Okla. 542.)

The statutes of Nebraska were in force in 1890.   They provide that:   "The widow of any deceased person shall be entitled to her distributive share of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she joins in a deed of conveyance with her husband or is otherwise lawfully barred."   (Statutes of Nebraska, 1889, p. 404.)

And when the deed of 1892 was made by Jenks, the Statutes of 1890, section 1716, p. 385, were in force, which provides that:   "Married persons may convey real estate other than the homestead, without the con currence of the husband or wife, as the case may be, but the title thereby conveyed shall be subject to the in-

choate right of inheritance, held by the husband or wife, not joining in the deed, if he, or she, survives the one executing the deed."

There is no evidence in the case to sustain a claim that the property in controversy was the homestead of Thomas H. Jenks. It shows the contrary. It shows that Agnes D. Jenks protested against his coming to Oklahoma; did not see him again for two years, resided in New Orleans, where she was a correspondent of the New York Tribune, and other papers and that Jenks resided alone on the claim until 1894, the object of his residence being to prove up a claim for his son, and that she has passed through the country and had spent "as much as two months at a time with him." These facts preclude any claim of homestead. Neither is there any claim here of right upon the condition of widowhood. There is no contention here upon the estate of inheritance of a deceased husband.

The judgment of the court below will be affirmed.

All of the Justices concurring.