SILAS B. PETTEE v. THE JOHN DEERE PLOW COMPANY, *a Corporation.*

(Filed February 18, 1902.)

1. REDEMPTION—Right of foreclosed, How. Under section 3264 of our statutes a mortgagee of personal property, when the debt to secure which the mortgage was executed becomes due may foreclose the mortgagor's right of redemption by a sale of the property, made in the manner and upon the notice prescribed by the artcle on pledge, or by proceedings under civil procedure.

2. CHATTEL MORTGAGE—Stipulations, Effect of. Where an agreement or stipulation between parties is incorporated in the chattel mortgage in addition to the general provisions contained therein that "the mortgagee shall take immediate possession of the mortgaged property and sell the same at retail or wholesale," it does not preclude the mortgagee from resorting to the remedies provided by the statute in foreclosing and selling the property at public sale in case of a breach of the conditions therein; such an agreement or stipulation confers additional rights and privileges upon the mortgagee; it enlarges his powers but does not limit or restrict them.                ,

3. FORECLOSURE—Bona Fides—Review. Where the *bona fides* of a forcclosure and sale of property under a chattel mortgage was an issue submitted to the trial court and the court having found for the mortgagee upon that issue such finding will not be disturbed here unless it is clearly against the weight of the testimony, upon the well settled principle that the findings of the trial court upon a controverted question of fact will not be disturbed by the supreme court unless such finding is manifestly against the clear and decided preponderance of the evidence.

4. SAME. We have examined the record in this case and hold that the evidence clearly sustains the finding of the trial court, that the foreclosure proceedings, of notice and sale were regular and made in good faith and for the best interest of the parties, under the conditions and circumstances existing at that time.

(Syllabus by the court.)

*Error from the District Court of Canadian County; before Clinton F. Irwin, Trial Judge.*

*C. O. Blake, E. E. Blake, W. F. Beeks* and *Don C. Smith*, for plaintiff in error.

*John C. Tarsney,* for defendant in error.

### STATEMENT OF FACTS.

On May 4, 1895, the plaintiff in error was engaged in the mercantile business at El Reno where be was the owner of a large stock of goods consisting of hardware, tinware, agricultural implements, wagons, carriages, etc., and at that time was deeply involved in debt. He was at that time indebted to D. C. Lake of Osage City, Kansas, on a promissory note in the sum of $1,600, and on said 4th day of May, 1895, he executed a chattel mortgage to said Lake to secure said indebtedness. On May 6, 1895, he was indebted to the First National bank of Osage City, Kansas, in the sum of $4,400 evidenced by four promissory notes, and on said date exexcuted a chattel mortgage to said bank to secure said indebtedness, and on May 8, 1895, he was indebted to the John Deere Plow company, the defendant in error, upon nine promissory notes aggregating the sum of $7,196.24, with interest, and to secure said notes he executed the defendant in error his chattel mortgage for said sum. These mortgages included the entire stock of merchandise owned by the plaintiff in error at El Reno. The three mortgages were identical in form except as to the names of the mortgagees and the amount of indebtedness secured thereby. These mortgages were executed upon the printed chattel mortgage blank forms in general use in this territory and contained the ordinary provisions for foreclosure in case

of a default as provided by our statute.    In addition to these
general provisions contained in chattel mortgages these three
mortgages in question contained the following written stipula-
tion, which was incorporated in the body of each mortgage:

"It is expressly agreed and understood that the mort-
gagee shall take immediate possession of all the goods and
chattels hereby mortgaged and sell the same at retail or whole-
sale for the best price or prices he can obtain and after paying
the actual expenses in the care, management and sale of said
stock he shall apply the net proceeds of such sale to the pay-
ment of the debt hereby secured."

On May 6, 1895, D. C. Lake took possesson of the mort-
gaged property ,under the terms of the mortgage executed to
him and also under the mortgage executed to the First Na-
tional bank of Osage City, of which he was the president, and
proceeded to sell said property at retail to satisfy said mort-
gage indebtedness, conducting the business in the same man-
ner as it had heretofore been conducted until the 28th day of
May, 1895.    On that day the defendant in error purchased
the unpaid indebtedness due from the plaintiff in error to D.
C. Lake and the bank on their mortgages and the possession
of the property was turned over to the defendant in error by
D. C. Lake and the defendant in error continued to sell said
property at retail.    On June 15, 1895, the defendant in error
gave notice of the foreclosure of said mortgages and sale of
said property on June 26, 1895, as provided by the statute.
The entire stock of goods was sold at public auction to Quigg
and Barringer for $7,096.06, they ,being the highest ,bidders
at the sale.    This entire amount was credited upon the in-
debtedness of the plaintiff in error, and there was a balance
due the defendant in error thereon of $4,505.60 with accrued
interest.

This action was brought by the defendant in error against the plaintiff in error to recover the balance due upon the unsatisfied notes in the sum of $4,505.60 and interest. The plaintiff in error, defendant in the court below, filed an answer admitting the execution of the notes and mortgages in controversy, and averred the conversion of the mortgaged property by the plaintiff, the election of the defendant to waive the tort and hold the plaintiff upon the implied contract to pay for the goods wrongfully alleged to have been converted by the plaintiff. By agreement of the parties the cause was sent by the court to a referee who took the testimony preserved in the bill of exceptions and incorporated here in the casemade, and reported the same to the court with his findings of fact and conclusions of law. The cause was then presented to the court upon a motion by the plaintiff in error for approval of the findings of fact and conclusions of law thereon and upon motion of the defendant in error that the court set aside such findings and conclusions of law and make such findings and conclusions of its own in accordance with the testimony and the law applicable thereto. Judge Tarsney, was then the presiding judge who tried said cause, and after examining the evidence he set aside a portion of the findings of fact and conclusions of law thereon of the referee and made findings of fact from the evidence reported, found for the defendant in error and announced that the judgment would be entered for the defendant in error for the principal sum found to be due on said notes and for the accrued interest. But through inadvertance it appears that the computation was never made and therefore judgment was never formally entered of record.

On April 30, 1900, the report of the referee was submitted to Judge Irwin, who was then the presiding judge of said

court, and after examination of said report and the argument of counsel Judge Irwin set aside the findings of fact and conclusions of law thereon by the referee and said cause was then submitted to the court upon the pleadings and evidence taken and reported by the referee and the court found the issues for the plaintiff and against the defendant, and rendered judgment in favor of the plaintiff on his several causes of action and against the defendant in the sum of $6,398.84.      From this judgment the defendant appeals.

Opinion of the court by

HAINER, J.:  The principal question presented by the record and argued by counsel for plaintiff in error is that the foreclosure proceedings were void because it was not authorized under the mortgages and was in violation of the agreement of the parties contained in said mortgage.  It is contended by counsel for plaintiff in error that the action of the defendant in error as mortgagee in advertising and selling the goods at public sale without the consent of the mortgagor was void and constituted a conversion of the property.  This contention is based upon the proposition that the stipulation contained in the mortgage which provided, "that the mortgagee shall take immediate possession of the mortgaged property and sell the same at retail or wholesale" precludes the mortgagee from resorting to the remedies provided by the statute in case of a breach of the conditions in the chattel mortgage, although the mortgages contained the usual provision for foreclosing by notice and sale.  We think this contention is unsound.

Section 3264 of our Statutes of 1893 provides as follows:

"A mortgagee of personal property, when the debt to secure which the mortgage was executed becomes due may fore-

close the mortgagor's right of redemption by a sale of the property, made in the manner and upon the notice prescribed by the article on pledge, or by proceedings under civil procedure * * *."

The stipulation which provided that the mortgagee shall take immediate possession of the property and sell the same at retail or wholesale does not preclude the mortgagee from resorting to the remedies provided for by the statute in case of a breach of the conditions of the mortgage. This provision conferred additional rights and privileges upon the mortgagee, it enlarged his powers, but did not restrict them. There is nothing in the stipulation or agreement of the parties that attempts to abridge the mortgagees rights to foreclose these mortgages under the statute. The record shows conclusively that there was a breach of condition in these chattel mortgages in this, that the notes were past due, and that the foreclosure and sale of the property mortgaged was made in strict conformity with the statute. We cannot conceive in what manner the rights of the plaintiff in error could be prejudiced or injuriously affected by reason of the fact that the property was advertised in the manner provided for by our statute and that it was sold at public sale and the proceeds thereof applied upon the indebtedness. The mortgagor having authorized the mortgagee to take immediate possession of the property and to sell the same at wholesale or retail surely cannot complain after a default in the mortgages that the mortgagee proceeded to foreclose and sell the same in manner and form provided by our statute.

It is next contended by counsel for plaintiff in error that the sale was void because it was not made in good faith and was a mere sham or subterfuge. It is sufficient answer to this question that the *bona fides* of the sale was an issue submitted

to the trial court and the court having found against the plaintiff in error such finding will not be disturbed here unless it is clearly against the weight of the testimony. This court has repeatedly held that a finding of the trial court upon a controverted question of fact will not be disturbed by this court unless manifestly against the clear and decided preponderance of the evidence. (*Penny v. Fellner,* 7 Okla. 386; *Light v. Bank,* 2 Okla. 542; *National Bank v. Earl,* 2 Okla. 617.)

There is no evidence in the record to sustain counsel's claim that the sale was a sham or subterfuge. On the contrary the evidence clearly sustains the finding of the trial court that the foreclosure proceedings of notice of sale were regular and made in good faith and for the best interests of the parties under the conditions and circumstances existing at that time.

We have examined the record and find no error therein.

The judgment of the district court is, therefore, affirmed

Irwin, J., having presided in the court below, and Burford, C. J., who was of counsel in the court below, not sitting, all the other Justices concurring.